KING, P.J.,
FOR THE COURT:
¶ 1. Robert E. Bridges was convicted of burglary of a dwelling in the Circuit Court of Pike County, Mississippi. He was sentenced to a term of twenty-five years in the custody of the Mississippi Department of Corrections and ordered to pay a fine and court costs. Aggrieved by his conviction, Bridges has appealed and raised the following issues:
I. Whether the verdict was against the overwhelming weight and sufficiency of the evidence.
II. Whether the repeated biblical references by Mr. E.J. Williams resulted in an unfair trial for Bridges.
FACTS
¶ 2. On July 8, 2000, Officer Gregory Patterson of the McComb Police Department investigated a reported burglary at the home of Rev. and Mrs. E.J. Williams. Officer Patterson noticed that two windows had been broken out, and there were palm prints on an interior table.
¶ 3. According to Williams, the intruder gained entry to his home by breaking the dining room window. The burglar apparently cut himself since there was blood on the glass. Once in the house, the burglar broke into the master bedroom, and stole $30 from Williams’ brief case.
¶ 4. Officer Greg Martin, a crime scene analyst with the McComb Police Department, photographed the crime scene, and *1191 lifted several latent prints from the glass, which were sent to the state crime lab for identification. The lab fingerprint examiner testified that those identifiable prints matched the fingerprint card of Robert E. Bridges.
¶ 5. Williams testified that Bridges had been employed by him for about four weeks, but had been discharged. According to Mrs. Williams, in a January 2001 conversation, she heard Bridges admit to her husband that he broke into their home.
ISSUES AND ANALYSIS
I.
Whether the verdict was against the overwhelming weight and sufficiency of the evidence.
¶ 6. Bridges contends that the verdict was against the overwhelming weight and sufficiency of the evidence. He maintains that “the State relied heavily on fingerprints that were found inside Williams’ home,” which was not sufficient evidence to support the verdict. He also argues that none of the State’s witnesses were actual eyewitnesses to the incident. It should be noted that an actual eyewitness is not mandatory for conviction. Freeman v. State, 228 Miss. 687, 697, 89 So.2d 716, 720 (1956).
In determining whether a jury verdict is against the overwhelming weight of the evidence, this Court must accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in fading to grant a new trial. Only in those cases where the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice will this Court disturb it on appeal. As such, if the verdict is against the overwhelming weight of the evidence, then a new trial is proper.
Baker v. State, 802 So.2d 77(¶ 14) (Miss.2001) (citations omitted).
¶ 7. In this instance, Bridges admitted that he broke one of the windows of the Williams’ home. Mr. Williams testified that Bridges admitted to breaking into his home:
A. And he — then he said, I didn’t break in there. And May said, yes, you did. I told you not to — not to break them windows. Then he said, I’m sorry. I wasn’t intended [sic] to break into your house. I’ll pay you for your windows and I’ll pay you for your brief case. And I’ll give you your money back when my income tax check come.
Mrs. Williams testified that she heard Bridges admit to her husband that he broke into their home. The latent fingerprint examiner indicated that the fingerprints retrieved from the crime scene matched the prints on the card bearing the name of Robert E. Bridges.
In reviewing challenges to the sufficiency of the evidence, this Court must consider all of the evidence in a light most favorable to the State. The credible evidence consistent with [a defendant’s] guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may be reasonably drawn from the evidence. Matters regarding the weight and credibility of the evidence are to be resolved by the jury. We are authorized to reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.
McClain v. State, 625 So.2d 774, 778 (Miss.1993) (citations omitted).
*1192 ¶ 8. Bridges argues that the evidence is insufficient because the testimony of the State’s witnesses does not establish all of the elements of the crime of burglary. Bridges does not state which element was absent of support. He states that no one testified that they saw him break and enter Williams’ home.
¶ 9. However, Bridges admitted through his testimony, that he did in fact break a window at Williams’ home. According to the officers, Bridges’ fingerprints were located on the glass and matched the fingerprints on the card bearing Bridges’ information from the police department. Williams and his wife both testified that Bridges admitted that he committed the offense. That evidence was sufficient to allow a jury to resolve issues of credibility against Bridges, and return a verdict of guilty. Alexander v. State, 811 So.2d 272(¶ 12) (Miss.Ct.App.2001). Unless, our review of the record leads us to conclude that no rational juror could have found Bridges guilty, this Court is obligated to affirm. Id. at (¶ 13). In this case, the record does not lead us to that conclusion.
II.
Whether the repeated biblical references by Mr. EJ. Williams resulted in an unfair trial for Bridges.
¶ 10. Bridges contends that repeated biblical references made by Williams resulted in him receiving an unfair trial. During cross-examination, Williams was asked if he knew how Bridges’ fingerprints came to be in the house. Williams answered in the following manner:
BY THE WITNESS: No, sir. All I know that they came off the windows and a table inside where the blood was on [sic]. I don’t know if they went to the door and checked there for the whole — blood printed hand was on the door there. Blood printed hand was in the master bedroom on my wife’s closet door.
I wasn’t the policeman who [sic] taken the fingerprints. And I don’t believe that Mr. Martin would just come up out of the blue sky to Mr. Bridges’ fingerprints. I don’t — I don’t believe he would pin anything on him. I don’t believe that he would come up and show me a picture and ask me did I know a Robert Bridges out of the blue sky with fingerprints and everything with the grand jury. Just a minute, sir.
And you said, no, I wasn’t there when he done it. I wasn’t no eye witness to see him go in there.
But I will tell you this. I’m a man of God.
BY MR. LUCKETT (For the Defendant): Your Honor, we would ask that this—
BY THE COURT: Sustained.
BY MR. LUCKETT: — testimony be struck.
BY THE WITNESS: And if God would have — ■
BY MR. LUCKETT: Your Honor—
BY THE WITNESS: Just a minute.
BY THE COURT: Rev. Williams, when the lawyer objects you be quiet—
BY THE WITNESS: Yes, sir.
[[Image here]]
BY THE COURT: So let’s go on until— the motion is denied. But let’s go on with Mr. Luckett’s cross-examination at this time.
¶ 11. Bridges moved for a mistrial based on Williams’ references to God, at which time the State responded by saying that “I don’t know how else a preacher describes himself as a man of God.” According to the State, Williams’ credibility was being challenged regarding the accu *1193 sations made by Bridges’ fiancee. The trial court agreed that “if he’s trying to defend his credibility, I don’t see anything wrong with it. I fail to see how your client’s been prejudiced in any shape, form, or fashion.” Nevertheless, the trial court offered to admonish the jury. Defense counsel unequivocally declined the circuit court’s offer to admonish the jury to disregard the testimony. Under these circumstances, we have held that there is no error requiring reversal. Buckley v. State, 511 So.2d 1354, 1357 (Miss.1987).
¶ 12. THE JUDGMENT OF THE CIRCUIT COURT OF PIKE COUNTY OF CONVICTION OF BURGLARY OF A DWELLING AND SENTENCE OF TWENTY-FIVE YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND PAY A FINE OF $5,000 AND RESTITUTION OF $150 IS AFFIRMED. COSTS OF THIS APPEAL ARE ASSESSED TO PIKE COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR. BRIDGES, J., NOT PARTICIPATING.